## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

**Greg Bakkestuen**
**David Winchell**
**Brian Jensen**

     **Plaintiffs**

     **v.**                               **Case No. 14-CV-700**

**Lepke Holdings LLC**
**William Lepke Trucking LLC**
**William Lepke**

     **Defendants.**

---

## COMPLAINT

---

Plaintiffs, by their attorneys, for their complaint against Defendants state as follows:

1.     This is an action by Plaintiffs, dump truck drivers formerly employed by Lepke Holdings LLC ("Lepke Holdings") and/or William Lepke Trucking LLC ("Lepke Trucking), to seek redress for the Defendants' failure to pay wages required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq. and Chapter 109 of the Wisconsin statutes.  The claims arise from the Defendants' unlawful policy of only counting as hours worked the time between when the Plaintiffs' dump trucks are loaded for the first time on the workday, and when the Plaintiffs' dump trucks are unloaded for the final time on the workday; and failing to count as hours worked all of the Plaintiffs' other work time that was equally required by the Defendants, and/or indispensable to the Plaintiffs' performance of work for the Defendants; and for their failure to

comply with their own policy, by failing to pay Plaintiff Jensen in full for his time between being loaded for the first time on the workday, and being unloaded for the final time on the workday.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3.      This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as his FLSA claims.

4.      This Court has personal jurisdiction over Defendants Lepke Holdings and Lepke Trucking because they maintain the same principal place of business, which is located in Vernon County, Wisconsin within this district.  The Court also has personal jurisdiction over Defendant William Lepke in that he resides in Vernon County, Wisconsin within this district.  The vast majority of acts that give rise to the Plaintiffs' claims against the Defendants occurred in this judicial district.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) & (c) because a substantial part of the events giving rise to the claims described herein occurred in this district and Defendants may be found within this district.

## THE PARTIES

6.      Plaintiffs are each adult residents of the State of Wisconsin residing within the Western District of Wisconsin.   Each plaintiff was employed by Lepke Holdings as a dump truck driver at various times between 2012 and April of 2014; while plaintiff Brian Jensen was also employed as a dump truck driver by Lepke Trucking between April of 2014 and July of

2

2014.  Pursuant to the consent forms attached as exhibit 1 to this complaint, each Plaintiff has consented to bring the complaint's Fair Labor Standards Act claims against the Defendants.

7.      During the course of their employment with Lepke Holdings and/or Lepke Trucking, the Plaintiffs regularly delivered and dumped off materials required for the construction, maintenance, or repair of highways and/or roadways directly connected to highways.  Since the highways and roadways are significant instrumentalities used by vehicles moving in interstate commerce, the Plaintiffs in practical effect were regularly engaged in the production of goods for interstate commerce during the course of their employment by Lepke Holdings and/or Lepke Trucking.

8.      Defendant Lepke Holdings is a limited liability corporation organized and existing under the laws of the State of Wisconsin.  Lepke Holdings became delinquent for failing to file reports required by the Wisconsin Department of Financial Institutions on April 1, 2014.  Lepke Holdings' principal place of business is at 914 Defreese Street in Viroqua, Wisconsin.  Lepke Holdings is an employer within the meaning of Wis. Stat. §109.03(1).  Lepke Holdings is also an enterprise engaged in the production of goods for commerce in that it is an enterprise that frequently assists in the construction, maintenance, and repair of highways and roadways, which are significant instrumentalities of interstate commerce.   At all relevant times, Lepke Holdings has had annual gross volume of business at or above $500,000.

9.      Defendant Lepke Trucking is a limited liability corporation organized and existing under the laws of the State of Wisconsin.  Upon information and belief, after Lepke Trucking was organized and registered with the State of Wisconsin in April of 2014, it took over Lepke Holdings' business with the same drivers, trucks, and customers.  Lepke Trucking's

3

principal place of business is at 914 Defreese Street in Viroqua, Wisconsin.  Lepke Trucking is an employer within the meaning of Wis. Stat. §109.03(1).  Lepke Trucking is also an employer covered by the FLSA in that it is an employer that frequently assists in the construction, maintenance, and repair of highways and roadways, which are significant instrumentalities of interstate commerce.   At all relevant times, Lepke Trucking has had annual gross volume of business at or above $500,000.

10.     At all relevant times William Lepke was the owner and/or agent in charge of Lepke Holdings and Lepke Trucking.  William Lepke was directly responsible for setting the compensation policies of Lepke Holdings and Lepke Trucking, determining hours worked and wage rates payable to dump truck drivers employed by Lepke Holdings and Lepke Trucking; and was ultimately responsible for the supervision of day to day work performed by dump truck drivers employed by Lepke Holdings and Lepke Trucking.   Upon information and belief, William Lepke resides in this district at 914 Defreese Street in Viroqua, Wisconsin.

## FACTS

11.      Plaintiffs' primary job responsibility as dump truck drivers for Lepke Holdings and/or Lepke Trucking was to pick up construction materials at storage locations, and deliver and drop off said construction materials at jobsites.  The Plaintiffs were also responsible for picking up waste materials from construction sites, and to dump off the materials at dump sites.

12.     The Plaintiffs could not successfully complete their work tasks for the Defendants without their dump trucks, since the dump trucks were the only vehicle available to them, which had the power to carry and deliver construction materials and waste to and from jobsites.  The

dump trucks were thus the most important tool used by the Plaintiffs in their day to day work for the Defendants.

13.     Each morning the Plaintiffs would pick up their dump trucks from a storage site located in Wisconsin, and then would drive their dump trucks between pickup locations, jobsites, and dump off locations.  During the vast majority of workdays none of the dump trucks operated by Lepke Holdings and/or Lepke Trucking were driven outside the State of Wisconsin.

14.     During the course of their employment with the Defendants, all of the Plaintiffs had work weeks during which they worked over 40 hours per week, and no dump truck drivers employed by Lepke Holdings and/or Lepke Trucking drove their dump trucks across state lines during the work weeks; and no dump truck drivers employed by Lepke Holdings and/or Lepke Trucking drove their trucks across state lines during the preceding four months and/or the entirety of their period of employment with the defendants, whichever period is shorter.

15.     All of the stone, sand, and other construction materials that the Plaintiffs transported using the dump trucks were originally removed from locations located within the State of Wisconsin.

16.     Once the construction materials are delivered to storage locations, they would be bought by owners and general contractors of construction projects, who may then hire Lepke Holdings and/or Lepke Trucking to deliver the construction materials from storage locations to the jobsite.  The persons who ordered for the construction materials to be delivered to, and stored at the storage areas therefore did not have any intent with respect to the final destination of the construction materials.

17.     Upon information and belief, persons who order for construction materials to be delivered to, and stored at the storage areas do not base their orders on pre-existing orders from, or sales contracts with the customers served by Lepke Holdings and/or Lepke Trucking; and do not determine the amount of construction materials to order based upon the needs of customers served by Lepke Holdings and/or Lepke Trucking.

18.     Throughout 2012 and 2013, the Plaintiffs were required by Lepke Holdings and William Lepke to store the dump trucks that they drove at the company yard located at Westby, Wisconsin.  In 2014, the Plaintiffs were required by the Defendants to store the dump trucks that they drove at a yard located in La Crosse, Wisconsin.

19.     Both before and after Lepke Holdings changed the storage location for the dump trucks from Westby, Wisconsin to La Crosse, Wisconsin, each morning the Plaintiffs were required by the Defendants to report to the company shop at Westby, Wisconsin.  Once at the shop the Plaintiffs would either receive their work assignments from Truck Bosses employed by Lepke Holdings and/or Lepke Trucking, or would be instructed to follow the Truck Bosses to their assigned pickup and drop off locations throughout the day.  The Plaintiffs did not have any way of determining what their daily work assignments are, if they did not report to the Westby shop in the morning, as required by the Defendants.

20.     When the dump trucks were stored at Westby, Wisconsin, once the Plaintiffs finished receiving their work assignments, they would then turn on their dump trucks, and build up the trucks' air pressure.

21.     The process of building up air pressure in the trucks, which took 5-8 minutes to complete, is an essential one without which key parts necessary to the trucks' operation, such as

the air brakes, cannot operate effectively.  After building up the trucks' air pressure, the Plaintiffs would also wait for the trucks to fully warm up before driving them, because the trucks are more likely to break down during the day, if they are driven before they have been fully warmed up.

22.     After the Defendants began storing the trucks at La Crosse overnight, once the Plaintiffs received instructions at the company shop at Westby, Wisconsin, they would then drive in their own vehicles to the truck storage location at La Crosse, Wisconsin.  Once the Plaintiffs arrived at La Crosse, Wisconsin, they would follow the procedure described in paragraph 20-21 of the complaint to build up the air pressure in, and warm up their trucks.

23.     After the Plaintiffs' trucks are ready to drive, they would then drive the trucks to the first location where they would pick up construction materials.  The Plaintiffs often have to wait in line before their trucks are loaded.

24.     After the Plaintiffs' trucks are loaded, they would then perform work assigned by William Lepke and the truck bosses throughout the day, which most often consisted of picking up and delivering construction materials, and picking up and dumping off waste products.

25.     At the end of the workday, the Plaintiffs would unload their trucks for the last time, and then drive the trucks back to the storage location, whether it was in Westby or La Crosse, Wisconsin.  Once the Plaintiffs arrived at the storage location, they would often perform maintenance work on the trucks such checking fluid levels on the trucks, fueling the trucks, and washing the trucks. No one else was available to perform these truck maintenance tasks for the Plaintiffs.   The Plaintiffs would also complete all paperwork that Lepke Holdings and/or Lepke Trucking required them to complete such as writing down the number of loads they delivered during the day, what materials they delivered, and the start and finishing mileage on their trucks.

7

The Plaintiffs would leave the storage location and drive home only after performing all required vehicle maintenance and paperwork tasks.

26.     The Defendants have never paid, nor treated as hours worked, time spent by Plaintiffs Bakkestuen, Winchell, and Jensen performing the tasks described in paragraphs 19-23, and 25 of the complaint.  Rather, the plaintiffs were only paid for all time between when their trucks are loaded for the first time on the day, and when their trucks are unloaded for the final time on the day.

27.     On or about March of 2014, the Defendants informed their dump truck drivers that in order to continue working for Defendants, the drivers were required to sign an agreement to lease their trucks from Lepke Holdings/Lepke Truckings.

28.     At the time of the March, 2014 announcement, Plaintiff Winchell was no longer employed by the Defendants.  When Plaintiff Bakkestuen became aware that the Defendants would require him to lease a truck as a condition of his continued employment, he decided to terminate his employment with the Defendants Instead.  Plaintiff Jensen was the only one of the Plaintiffs who signed a lease agreement with Lepke Holdings/Lepke Trucking.

29.      After Plaintiff Jensen signed the lease agreement, William Lepke informed him that he would receive pay at $22 per hour, but without any fringe benefits.  At the end of most workweeks, William Lepke would show to Jensen a sheet showing the revenue generated by his truck during the week.  Lepke would then calculate Jensen's weekly wages at $22 per hour, but not paying Jensen for any of the work listed in paragraphs 19-23, and 25 of the complaint.

30.     The Defendants would then count the difference between total revenue generated by the truck during the week; and Jensen's wages calculated at $22 per hour, as the "rental

payment" and expenses for the truck for the week.  The amount of the rental payment consequently changed from week to week.

31.     After Jensen signed the lease agreement, the Defendants continued to require him to store the dump truck at La Crosse, to report to the shop at Westby each morning, to pick up and drop off the dump truck at La Crosse, to work at the pickup and dump off locations, and perform all work tasks assigned by them, and to complete all required paperwork.

32.     After Jensen and his fellow dump truck drivers signed the lease agreements, Truck Bosses employed by the Defendants continued to follow the drivers as they performed their day to day work.   The Truck Bosses also continued to supervise and correct the manner of the drivers' day to day work such as how they completed specific work tasks, in the same way that they supervised and corrected the manner of the work of each of the plaintiffs, before the Defendants required its truck drivers to sign the lease agreements.

33.     Because the Defendants required that Jensen keep his dump truck at the La Crosse storage facility, when it is not being used to perform work for Lepke Holdings/Lepke Trucking, Jensen had no opportunity to use the truck that he supposedly "leased" from the defendants to perform work for anyone other than the Defendants.    Consequently, Jensen was entirety dependent upon the defendants for each and every one of his work assignments, which he needed in order to work enough hours to earn his livelihood.

34.     After Jensen signed the lease agreement, the defendants continued to pay all of the expenses of the dump truck that Jensen supposedly leased.  Jensen, who paid for the "lease" of the truck through revenue generated by the dump truck, faced the prospect of the loss of wages, but not the loss of his investment from the unprofitable operation of the dump truck.

9

35.     Moreover, Jensen had no control over the profitability of the dump truck that he operated when he had no involvement in obtaining work assignments for the truck; when the Defendants and the Truck Bosses determined the order and timing that the drivers performed work in, and when Truck Bosses employed by the defendants closely watched and supervised the day to day operation of the trucks.

36.     Jensen voluntarily terminated his employment with Lepke Trucking and William Lepke in July of 2014.  For the time period after he signed the lease agreement, and prior to termination of employment, Jensen did not receive wages at $22 per hour for each hour between when he was loaded for the first time on the day, and when he was unloaded for the final time on the day.

37.     After Jensen signed the lease agreement, the Defendants also failed to pay Jensen overtime pay during work weeks during which he worked over 40 hours per week, even though during those weeks no Lepke drivers had any assignments requiring them to drive across state lines, and during the preceding four months no Lepke drivers had an assignment requiring them to drive across state lines.

### Count I.        Overtime Pay Claim Under the Fair Labor Standards Act Against All Defendants.

38.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 37 of the complaint.

39.     The Plaintiffs' work of receiving their work assignments in the morning, building up the air pressure in and warming up the dump trucks, transporting the dump trucks as the main tool of their trade to the first pick-up location, and waiting for their trucks to be loaded at the first

pick-up location are indispensable parts of the performance of their principal activity, the transport of construction materials using the dump trucks.

40.     The Plaintiffs are required to be in the cab of the truck while waiting for their trucks to be loaded given the need to move their trucks forward in the waiting line of trucks; and cannot effectively use the time for their own purposes.

41.     Since the Plaintiffs were required by the defendants to arrive at the Westby shop to receive their daily work assignments, the Plaintiffs' work at the Westby shop is a principal activity, so that all of the Plaintiffs' travel time between the Westby shop and the truck pick-up location at La Crosse constitute work time, as a part of their day's work, pursuant to 29 C.F.R. §785.38.

42.     All of the time spent by the Plaintiffs driving between their last dump off location for the day and the storage location for the dump trucks constitute a part of their day's work, pursuant to 29 C.F.R. §785.38, given that the Defendants assigned to the Plaintiffs the job duty of driving the trucks back to the storage location chosen by, and for the benefit of the Defendants.

43.     All of the time spent by the Plaintiffs fueling and maintaining the dump trucks at the end of their work days are indispensable to the performance of their principal activity, in that they could not perform their principal activity of transporting construction materials without a well-maintained dump truck; and the Defendants did not have other employees who could maintain and fuel the trucks for the Plaintiffs.

44.     The Defendants required the Plaintiffs to complete paperwork at the end of the day; and the paperwork was primarily for the Defendants' benefit in that it permitted them to

track both the work performed, and the mileage travelled by the dump trucks during the course of the workday.

45.     It may take the Plaintiffs 4 hours or more per day to complete the tasks outlined in paragraphs 19-23, and 25 of the complaint, all of which constitute compensable work under the FLSA.

46.      Consequently, had the Defendants counted the plaintiffs hours performing the tasks outlined in paragraphs 19-23 and 25 of the complaint as hours worked, each of the Plaintiffs would have had additional hours worked over 40 hours per week, during weeks when no drivers employed by the Defendant drove across state lines; and no drivers employed by the Defendants drove their trucks across state lines during the preceding four months and/or the entirety of their period of employment with the defendants, whichever period is shorter.  These weeks included ones where the Plaintiffs delivered and dumped off construction materials for the construction, maintenance, and repair of highways and roadways directly connected to highways.

47.     Pursuant to 29 U.S.C. §207(a)(2), the Defendants are required to pay the Plaintiffs for all of their hours worked over 40 per week.  For the weeks described in paragraph 46 of the complaint Defendants Lepke Holdings and/or Lepke Trucking failed to pay the Plaintiffs for all of their hours worked over 40 per week, once all of the plaintiffs' hours worked performing tasks outlined in paragraphs 19-23, and 25 of the complaint are taken into account.

48.     Since William Lepke was both ultimately responsible for supervising the works of the plaintiffs; and was directly responsible for making the decision to stop counting as hours worked time spent by the plaintiffs performing the tasks outlined in paragraphs 19-23, and 25 of the complaint, William Lepke was the plaintiffs' employer within the meaning of 29 U.S.C.

12

§203(d), so that he is personally liable for Lepke Holdings/Lepke Trucking's failure to pay to the plaintiffs all overtime pay required by the Fair Labor Standards Act.

49.     Since the defendants did not have any, let alone reasonable grounds for believing that the plaintiffs' time spent performing the tasks outlined in paragraphs 19-23, and 25 need not be counted as hours worked under the FLSA, the plaintiffs are entitled to 100% liquidated damages for all overtime pay damages that the defendants owed to them.

50.     The plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against the defendants.

**Count II.        Claim for Straight Time and Overtime Pay Under Wisconsin Law Against Lepke Holdings and Lepke Trucking.**

51.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-50 of the complaint.

52.     The DWD regulations defining hours worked under Wisconsin law, in particular sections (1), (2)(e), and 2(g)5 of DWD §272.12 are substantially similar to regulations defining hours worked under the FLSA; so that all of the Plaintiffs' time spent performing tasks outlined in paragraphs 19-23, and 25 of the complaint are hours worked under Wisconsin law, for the reasons stated in paragraphs 39-44 of the complaint.

53.     Since the Defendants agreed to pay the Plaintiffs their regular hourly rate for each and every one of their hours worked, the Plaintiffs are entitled to hourly pay at their regular hourly rate for each and every hour spent performing the tasks outlined in paragraphs 19-23, and 25 of the complaint, which the Defendants to date has failed to pay.

54.     Similarly, since the Defendants agreed to pay Plaintiff Jensen $22 per hour for each and every hour worked after he signed the lease agreement with the Defendants, Jensen is

entitled to straight pay of $22 per hour for each and every hour worked thereafter. The Defendants have failed to pay to Jensen wages at the agreed upon rates both for hours spent performing tasks outlined in paragraphs 19-23, and 25 of the complaint; and for other hours that he worked in between when he was loaded for the first time on the day, and was unloaded for the final time on the day.

55.     Wis. Stat. §109.03(1) requires the employer to pay to each of his employees all wages earned within 31 days after they are earned. Lepke Holdings and Lepke Trucking therefore violated Wisconsin law by failing to pay to the Plaintiffs all straight time wages that the Plaintiffs are entitled to, as outlined in paragraphs 53 and 54 of the complaint.

56.     Pursuant to DWD §274.03, the Plaintiffs were entitled to overtime pay at 1.5 times their regular rate for all hours worked over 40 per week, unless their likelihood of receiving out-of-state driving assignments using the dump trucks made them exempt from §274.03.

57.     All of the Plaintiffs would have received additional overtime pay from the Defendants had the Defendants counted the Plaintiffs' hours spent performing tasks outlined in paragraphs 19-23, and 25 of the complaint as hours worked; during weeks when no drivers employed by the Defendants drove across state lines; and no drivers employed by the Defendants drove their trucks across state lines during the preceding four months and/or the entirety of their period of employment with the Defendants, whichever period is shorter.

58.     The Defendants therefore violated DWD §274.03 and Wis. Stat. §109.03(1) by failing to pay to the Plaintiffs all overtime pay required by law.

14

59.     Pursuant to Wis. Stat. §109.03(5), the Plaintiffs are entitled to maintain a lawsuit against Defendants Lepke Holdings and Lepke Trucking for all wages that they are entitled to receive pursuant to Wis. Stat. §109.03(1).   In such a lawsuit the Plaintiffs are also entitled to receive the 50% increased damages authorized by Wis. Stat. §109.11(2)(b), along with their reasonable attorneys fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

**Count III.     Wisconsin Law Claim under DWD §272 Against William Lepke.**

60.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-59 of the complaint.

61.     At all relevant times William Lepke was ultimately responsible for overseeing the Plaintiffs' work for Lepke Holdings/Lepke Trucking, so that he had had control or direction over the Plaintiffs as employees of Lepke Holdings/Lepke Trucking.

62.     Additionally, William Lepke was the person responsible for not counting the Plaintiffs' time spent performing activities outlined in paragraphs 19-23, and 25 of the complaint as hours worked; for offering to Plaintiff Jensen a sham agreement to treat him as an independent contractor; and for failing to pay to Plaintiff Jensen the agreed upon regular wages and legally required overtime wages after it began to unlawfully treat him as an independent contractor; so that William Lepke was directly responsible for making the decisions that affected the payment of wages to the Plaintiffs.

63.     William Lepke was therefore an employer within the meaning of DWD §272.01(5)(a).   He was therefore personally responsible pursuant to DWD §272.10 to pay to the

15

Plaintiffs the full amount of wages due to or earned by them, minus deductions that are supported by legitimate reasons listed on the paychecks of the employees.

64.     William Lepke was directly responsible for deducting from the Plaintiffs' wages the straight time wages described by paragraphs 53 and 54 of the Complaint, as well as the overtime wages described by paragraph 57 of the Complaint. Lepke deducted the wages without any legitimate reason, let alone any legitimate reasons listed on the employees' paychecks, in violation of DWD §272.10.

65.     William Lepke is personally liable to the Plaintiffs for his own violation of DWD regulations, which has caused to the Plaintiffs damages equal to the full amount of straight time and overtime pay that they are seeking in count II of the complaint.

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1.     Finds that Lepke Holdings, Lepke Trucking, and William Lepke are jointly and severally liable to the plaintiffs for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2.     Finds that Lepke Holdings, Lepke Trucking, and William Lepke are jointly and severally liable to the Plaintiffs for all unpaid straight time and overtime wages that the Plaintiffs are owed under Wisconsin law;

3.     Finds that Lepke Holdings and Lepke Trucking are jointly and severally liable to the Plaintiffs for increased damages equal to 50% of the unpaid straight time and overtime wages that the Plaintiffs are owed under Wisconsin law, plus the Plaintiffs' attorneys fees and costs of prosecuting their Wisconsin law claims;

4.      Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

Dated this 15th day of October, 2014.

/s/Yingtao Ho

Yingtao Ho
yh@previant.com
Wis.  Bar #1045418
Attorney for Plaintiffs
The Previant Law Firm S.C.
1555 North RiverCenter Drive, Suite 202
P. O. Box 12993
Milwaukee, WI  53212
Telephone: 414-271-4500
Fax: 414/271-6308