IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GREG BAKKESTUEN,
DAVID WINCHELL and
BRIAN JENSEN,                                                           OPINION AND ORDER

               Plaintiffs,                                    14-cv-700-bbc

      v.

LEPKE HOLDINGS LLC,
WILLIAM LEPKE TRUCKING LLC and
WILLIAM LEPKE,

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - -

       Plaintiffs Greg Bakkestuen, David Winchell and Brian Jensen have brought this civil

action against defendants Lepke Holdings LLC, William Lepke Trucking LLC and William

Lepke, alleging (1) a proposed collective action under the Fair Labor Standards Act (FLSA),

29 U.S.C. §§ 201-219, for unpaid overtime work they performed as dump truck drivers; and

(2) individual claims and a proposed state law class action under Fed. R. Civ. P. 23 for

unpaid hourly, overtime and prevailing wage rate work.  Second Am. Cplt., dkt. #30.  The

parties stipulated to conditional certification of the FLSA collective action on May 21, 2015,

dkt. #35, but it appears that only plaintiffs Bakkesuen, Winchell and Jensen have opted in.

Dkt. #30, exh. #1.  Plaintiffs have not filed a motion to certify their state law class under

Fed. R. Civ. P. 23.

This case is scheduled for trial to the court on December 1, 2015.  Dkt. #19.  Before the court are the parties' fully briefed cross motions for summary judgment, dkt. ##39 and 47, and plaintiffs' motion for leave to file a sur-reply, dkt. #73, in response to defendants' motion for summary judgment.

Using the representative examples of the workweeks ending July 26 and September 27, 2013 for plaintiff Bakkestuen, plaintiffs ask the court to determine as a matter of law both that they were entitled to be paid for the time they spent driving their trucks, waiting for the trucks to be loaded and fueling their trucks and the method to be used in calculating damages.  Defendants argue that plaintiffs' FLSA claims should be dismissed because all of their employees are exempt from overtime compensation under the Motor Carrier Act, 29 U.S.C. § 213(b)(1), and ask the court to decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

Having reviewed the parties' submissions, I conclude that defendants have shown that plaintiffs are exempt from overtime pay under the Motor Carrier Act.  Accordingly, I and will dismiss plaintiffs' FLSA claims, including their proposed collective action.  I find that by failing to move for class certification under Rule 23 with respect to the state law claims, plaintiffs have waived their right to bring suit on behalf of similarly situated individuals.  In light of the dismissal of all of plaintiffs' federal claims and plaintiffs' failure to show that judicial economy or fairness weigh in favor of federal court resolution of the remaining state law issues, I decline to exercise supplemental jurisdiction over plaintiffs' individual state law

2

claims.  Finally, although I am not convinced that defendants raised new arguments in their reply brief to which plaintiffs are entitled to respond, I will grant their motion for leave to file a sur-reply brief.

UNDISPUTED FACTS

Plaintiffs were dump truck drivers employed by defendant Lepke Holdings LLC in 2013 and 2014.  Plaintiff Bakkestuen was employed between July 23, 2013 and March 18, 2014; plaintiff Winchell was employed between April 30, 2013 and February 19, 2014 (although defendants paid Winchell's salary during April 2013, Winchell did not officially become an employee of Lepke Holdings until April 30); and plaintiff Jensen was employed between July 31, 2013 to July 28, 2014.

Defendant William Lepke formed Lepke Holdings on June 6, 2012, and created defendant Bill Lepke Trucking LLC on April 11, 2014.  Both companies are based in Westby, Wisconsin and provide for-hire transportation of bulk commodities.  Between November 2013 and June 2014, defendants kept their dump trucks at a truck dealership in La Crosse, Wisconsin to be close to a project relating to the reconstruction of the Interstate Highway 90 bridge that crosses the Mississippi River on the border between Wisconsin and Minnesota.  All of defendants' drivers are qualified to operate in interstate commerce.

Between February 4, 2013 and October 12, 2013, defendant William Lepke personally transported 39 interstate shipments.  Other drivers transported interstate shipments on at least 18 occasions between June 24, 2013 and September 26, 2013.  A non-employee, Chad Volden, made six of the 18 trips.  The remaining 12 routes were driven for

Mathy Construction; plaintiff Winchell drove two of the routes and plaintiff Jensen drove five. Bakkestuen's first interstate driving assignment was in November 2013. No driver employed by Lepke Holdings had an interstate driving assignment during the week ending July 26, 2013. Between April 20 and October 27, 2013, 20 interstate routes were driven for Dan Lepke Trucking and 12 were driven for Kraemer Construction, the railroad, Hamberg Township, Jeff Kjelland, Art Jacobson or Jerry Jothen. William Lepke drove 26 of these routes, and Volden drove the other six. On October 28, 2013, defendants began working on the I-90 bridge project, which resulted in defendants' drivers making more interstate trips.

OPINION

A.  Motor Carrier Exemption to Federal Claims

The overtime provisions of the Fair Labor Standards Act do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This exemption is known as the "motor carrier exemption" and its application depends on both the class to which the employer belongs and on the class of work involved in the employee's job. 29 C.F.R. § 782.2(a). Section 204 of the Motor Carrier Act, 49 U.S.C. § 31502, authorizes the Secretary to establish qualifications and maximum hours of service for employees of a motor carrier if "property ... [is] transported by [the] motor carrier between a place in a State and a place in another State," 49 U.S.C. §§ 13501(1)(A), 31502, and the employees "engage in activities of a

4

character directly affecting the safety of operation of motor vehicles in the transportation on

the public highways of passengers or property in interstate or foreign commerce within the

meaning of the Motor Carrier Act."  29 C.F.R. § 782.2(a).  See  also Collins v. Heritage

Wine Cellars, Ltd., 589 F.3d 895, 897 (7th Cir. 2009) (citing id.; Levinson v. Spector Motor

Service, 330 U.S. 649, 670-72 (1947); Walters v. American Coach Lines of Miami, Inc., 575

F.3d 1221, 1227-28 (11th Cir. 2009) (per curiam)).  A driver driving a vehicle carrying

property traveling in interstate commerce is an example of an employee covered under the

Act.  Collins, 589 F.3d at 898.

The applicability of the motor carrier exemption "depends upon the activities of

individual employees."  Goldberg v. Faber Industries, Inc., 291 F.2d 232, 235 (7th Cir.

1961).  See also McGee v. Corporate Express Delivery Systems, No. 01-C-1245, 2003 WL

22757757, at *3 (N.D. Ill. Nov. 20, 2003); Collins v. Heritage Wine Cellars, Ltd., No.07-

CV-1246, 2008 WL 5423550, at *10 (N.D. Ill. Dec. 29, 2008), aff'd, 589 F.3d 895 (7th

Cir. 2009) ("The activities of one Plaintiff cannot justify a blanket exemption for other

Plaintiffs.").  The Court of Appeals for the Seventh Circuit has explained that

> An employee comes within the Secretary of Transportation's jurisdiction so
> long as the employee is "subject, at any time, to be[ing] assigned to interstate
> trips."  Goldberg, 291 F.2d at 235. A minor involvement in interstate
> commerce as a regular part of an employee's duties subjects that employee to
> the Secretary of Transportation's jurisdiction. See [Reich v. American Driver
> Service, Inc., 33 F.3d 1153, 1155–56 (9th Cir. 1994)] (citing Morris v.
> McComb, 332 U.S. 422, 432–35 (1947)).  However, an employee's minor
> involvement does not necessarily subject that employee to the Secretary of
> Transportation's jurisdiction indefinitely. Id.

Johnson v. Hix Wrecker Service, Inc., 651 F.3d 658, 661 (7th Cir. 2011).  In addition,

regulations promulgated by the U.S. Department of Labor state that so long as an employee

5

is likely to be called upon (either regularly or from time to time) to drive interstate routes, "the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.' On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties." 29 C.F.R. § 782.2(b)(3). Further "[w]here the same employee of a carrier is shifted from one job to another periodically or on occasion, the application of the exemption to him in a particular workweek is tested by application of the above principles to the job or jobs in which he is employed in that workweek." 29 C.F.R. § 782.2(b)(4). Therefore, it is possible that the exemption may apply to an employee during one workweek and not apply the next. The burden is on the motor carrier to show that an employee is exempt. Johnson, 651 F.3d at 661.

Defendants have presented evidence that Lepke Holdings performed interstate motor carrier services several times a month starting on February 14, 2013, that all of their dump truck drivers were qualified to operate in interstate commerce and that each of the named plaintiffs (who are the only members of the conditionally certified collective action) drove interstate routes at some point while employed with defendants. Plaintiffs admit that they were subject to the motor carrier exemption as of October 28, 2013, when defendants began working on the I-90 bridge. Dkt. #59 at 5. However, they contend that they cannot be found exempt for those weeks during which they were not personally assigned an interstate route (between July 23 and October 27, 2013 for plaintiff Bakkestuen; between April 20 and

6

June 23, 2013 for plaintiff Winchell; and between July 23 and August 22, 2013 for plaintiff

Jensen) because they had only a remote chance of receiving an interstate driving route prior

to the I-90 project.  The argument is not persuasive.

The parties do not dispute the basic facts.  Defendants had 57 interstate routes

between February and October 2013.  Defendant William Lepke personally drove 39 routes,

and plaintiffs and other drivers drove the remaining 18 routes.  Six of the 18 routes were

assigned to Chad Volden, who was not yet an employee of defendants.  Although William

Lepke and Volden drove more routes than some of the plaintiffs, Lepke explains in his

declaration that he acquired additional dump trucks in early 2013 and began assigning

routes to other drivers as they were hired later in 2013.  Dkt. #49 at ¶ 8.  (I note that a

review of defendants' interstate shipments not involving the I-90 project shows that plaintiff

Jensen actually drove twice as many interstate routes as Volden between June and November

2013.  Although plaintiffs suggest that this may have been because Jensen drove a special

kind of truck with a "live bottom," they fail to develop this argument fully and offer no

evidence from which the court may draw this conclusion other than Jensen's statement that

he spent a number of days in Minnesota using the truck.).

In an attempt to show that their involvement in interstate commerce was de minimis,

plaintiffs go to great effort to segregate the routes identified by defendants.  They point out

that a majority of the interstate routes were driven by defendant William Lepke and Volden

for Dan Lepke Trucking and Kraemer Construction, which plaintiffs insist are "non-regular

customers."  Plaintiffs contend that there were only 12 routes for "regular customers" that

defendants would have assigned them before the I-90 project, a number that, in their view,

is de minimis.  However, there is no evidence that defendants categorized their customers in this manner when assigning routes.  In fact, William Lepke submitted a declaration in which he states that he assigned the drivers work on a day-by-day basis and plaintiffs could have been assigned any of the 57 interstate routes.

In support of their argument, plaintiffs rely primarily on vague statements in plaintiff Bakkestuen's declaration that during the relevant time period, the primary customers for Lepke Holdings were Mathy Construction and Gerkes Construction and that "to the best of [his] knowledge," William Lepke and Volden "rarely if ever" worked for Mathy and Gerkes or drove routes with other drivers who worked for Lepke Holdings.  Bakkestuen decl., dkt. #62, ¶¶ 5-7.  Plaintiffs also suggest that defendant William Lepke drove interstate routes for a different company because Bakkestuen declared that he often saw William Lepke drive a truck with the name "Dan Lepke Trucking & Excavating," which was a company owned by William Lepke's father.  Id. at ¶ 8.  However, Bakkestuen's statements are lacking in foundation and appear to be nothing more than mere speculation.  Nothing in the record before the court suggests that defendants based interstate route assignments on a particular class of customers or drivers.  Without more, it is not reasonable to infer from this limited evidence that only William Lepke and Volden drove the interstate routes for Dan Lepke Trucking and "non-regular Lepke customers" and that defendants assigned a limited number of interstate routes for regular customers to the other employee drivers.  Cf. Goldberg, 291 F.2d at 234-35 (finding only five out of 20 drivers exempt where no evidence that other 15 drivers *ever* drove any interstate route).

Even assuming that plaintiffs are correct in saying that they had only a chance of being assigned a limited number of interstate routes for one customer, I am not persuaded that the 12 interstate routes that defendants assigned them between June and October 2013 were so insignificant as to be de minimis.  Plaintiffs contend that the 12 assignments were isolated occurrences for Mathy Construction and cannot be considered part of their regular job duties because most of defendants' work for Mathy involved intrastate routes.  However, federal courts have held that motor carriers are exempt even when the vast majority of their transportation business is intrastate.  E.g., Morris v. McComb, 332 U.S. 422, 423 (1947) (exemption applies even though interstate commerce equaled only three to four percent of carrier's total services); Turk v. Buffets, Inc., 940 F. Supp. 1255, 1261-62 (N.D. Ill. 1996) ("In cases where the de minimis rule was found to apply to drivers, the drivers spent less than one percent of their time in interstate travel.").

Although plaintiffs would have the court require defendants to show how and for what purpose Mathy decided to assign the interstate routes to defendants, that level of detail is not required in this case.  It was plaintiffs' burden to produce any evidence suggesting that the interstate routes driven for Mathy were sporadic and isolated or somehow not part of Mathy's regular business dealings with defendants.  They failed to carry this burden.  A review of defendants' interstate routes shows that these routes were driven several times a month on a regular basis.  (Although plaintiffs contend that the court should not consider this evidence because defendants did not include specific information concerning each route in their proposed findings of fact, both sides clearly referred to this evidence and relied on

9

it in their proposed findings of fact and summary judgment briefs.).  Because defendants had

such regular interstate routes, I also disagree with plaintiffs that it is necessary for defendants

to show that they actively solicited interstate business on a continuing basis.  Reich v.

American Driver Service, Inc., 33 F.3d 1153, 1156 (9th Cir. 1994) ("'[C]arrier's

involvement in interstate commerce must be established by some concrete evidence such as

an actual trip in interstate commerce or proof, in the case of a "for hire" carrier, that

interstate business had been solicited.'") (quoting 46 Fed. Reg. 37,902, 37,903 (1981)).

Plaintiffs also would have the court analyze the interstate driving assignments on a

week-by-week basis to show that during some weeks, such as the week of July 26, 2013,

there was no interstate route and therefore no chance that they could have been assigned a

route.    However, the Secretary of Transportation, through the Federal Highway

Administration, has promulgated a notice of interpretation, explaining that "[e]vidence of

driving in interstate commerce or being subject to being used in interstate commerce should

be accepted as proof that the driver is subject to 49 U.S.C. 304 for a 4-month period from

the date of the proof.  The FHWA believes that the 4-month period is reasonable because

it avoids both the too strict week-by-week approach and the situation where a driver could

be used or be subject to being used once and remain subject to jurisdiction under 49 U.S.C.

304 for an unlimited time."  46 Fed. Reg. 37,902, 37,903 (1981).

The two cases on which plaintiffs rely for the week-by-week approach  do not support

their view.  Elliot v. Dave Ernstes & Sons Trucking, 2006 WL 2849705 (S.D. Ind. Oct. 3,

2006); Williams v. Tri-State Biodiesel, LLC, 2015 WL 305362 (S.D.N.Y. Jan. 23, 2015).

In <u>Elliot</u>, the district court rejected the week-by-week analysis, finding that out-of-state trips were a natural and integral part of plaintiffs' job duties:

> Ernstes engaged in interstate commerce and regularly assigned interstate jobs to dump truck drivers like Plaintiffs. Plaintiffs admit that they traveled out of state on multiple occasions. They had no set route like the <u>Faber</u> drivers, and it did not take something out of the ordinary to be assigned to an interstate run as alleged by the <u>McGee</u> drivers. The only thing that had to happen was that Ernstes receive interstate business and one of the Plaintiffs have the least amount of work to do when it came in.

<u>Elliot</u>, 2006 WL 2849705, at *6.  Although in <u>Williams</u> the court noted that a few district courts have used a week-by-week analysis, it found that "[c]ourts often decline to engage in a week-by-week analysis where it is clear that the reasonable expectation of interstate travel was continuous throughout the period of employment."  <u>Williams</u>, 2015 WL 305362, at *10.  This includes courts in the Seventh Circuit.  <u>Id</u>. at *11 (citing <u>Johnson</u>, 651 F.3d at 663 (applying four-month rule); <u>Jaramillo v. Garda, Inc.</u>, 2012 WL 4955932, at *4–5 (N.D. Ill. Oct.17, 2012) (finding week-by-week analysis "burdensome")).

Plaintiffs also argue that plaintiff Bakkestuen was a special case because he had the right to decline routes offered to him, but this makes no difference because Bakkestuen could and did choose to drive an interstate route.  <u>Elliot</u>, 2006 WL 2849705, at *6 (finding same and noting that important point was that plaintiffs could have been asked to travel out of state).  Plaintiffs have not adduced any evidence from which the court could infer that Bakkestuen refused to take any interstate routes or had any specific reason for doing so.  <u>Cf.</u> <u>Solis v. R.M. International, Inc.</u>, No. 3:09-CV-863-BR, 2012 WL 912942, at *5 (D. Or. Mar. 16, 2012) (finding no reasonable expectation that drivers would be involved in

interstate commerce in face of overwhelming evidence at trial that defendants' policy was to seek only volunteers for interstate trips).

In sum, I find that plaintiffs are subject to the § 213(b)(1) exemption in light of their reasonable expectation that they could have been expected to drive an interstate route for defendants. Accordingly, plaintiffs' claims for overtime pay under the Fair Labor Standards Act must be dismissed.

### B.  State Law Claims

All of plaintiffs' remaining claims arise under state law. Although plaintiffs amended their original complaint to bring a state law class action under Fed. R. Civ. P. 23, they have not filed a motion to certify a class and, therefore, have waived their right to represent anyone with respect to the state law claims.

When a court dismisses all of the federal claims before trial, as in this case, the normal course is to relinquish jurisdiction over supplemental law claims; this practice is "based on legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." Khan v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir. 1996) vacated on other grounds, 522 U.S. 3 (1997). See also Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997) ("[P]endent jurisdiction is 'a doctrine of discretion, not of plaintiff's right.'") (quoting United Mineworkers of America v. Gibbs, 383 U.S. 715, 726 (1966)). The presumption of relinquishment is rebuttable when a party shows that judicial economy, convenience, fairness and comity tip the balance in favor of federal decision of state law

issues.  <u>Wright v. Associated Insurance Cos. Inc.</u>, 29 F.3d 1244, 1251 (7th Cir. 1994); <u>Barry</u>

<u>Aviation, Inc. v. Land O'Lakes Municipal Airport Commission</u>, 366 F. Supp. 2d 792, 811-12

(W.D. Wis. 2005).

Plaintiffs ask the court to retain jurisdiction over their state law claims because all of

their claims are subject to a two-year statute of limitations, which ran while this lawsuit was

pending.  However, 28 U.S.C. § 1367(d) tolls the period of limitations for any claim asserted

under subsection § 1367(a) "while the claim is pending and for a period of 30 days after it

is dismissed unless State law provides for a longer tolling period."  Therefore, unless

plaintiffs fail to file their state law claims in state court within 30 days of dismissal, they will

not suffer any prejudice on the statute of limitations issue.  <u>Barry Aviation</u>, 366 F. Supp. 2d

at 812.  Because I have dismissed all of plaintiffs' federal claims and plaintiffs have failed to

show that judicial economy or fairness weigh in favor of federal court resolution, I decline

to exercise supplemental jurisdiction over plaintiffs' state law claims.


ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants , dkt. #47, is GRANTED

and the motion for summary judgment filed by plaintiffs Greg Bakkestuen, David Winchell

and Brian Jensen, dkt. #39, is DENIED.  Plaintiffs' Fair Labor Standards Act claims are

DISMISSED with prejudice, and the court declines to exercise supplemental jurisdiction

over plaintiffs' remaining state law claims.

2.  Plaintiffs' motion for leave to file a sur-reply, dkt. #111, is GRANTED.

3.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 13th day of October, 2015.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge